IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-31350

_____

ELAINE F. GRANT; ALFRED GRANT; JACQUELINE
LEARY,

                                    Plaintiffs-Appellants,

v.

CHEVRON PHILLIPS CHEMICAL CO. L.P., as
Successor in Interest to CHEVRON CHEMICAL
COMPANY,

                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

October 11, 2002

BEFORE WIENER, EMILIO M. GARZA, and PARKER, CIRCUIT JUDGES.

WIENER, Circuit Judge:

The captioned case is before us by virtue of the district court's highly principled certification for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We are called on to answer an important removal and remand question which (1) arises in the context of diversity jurisdiction under 28 U.S.C. § 1332, (2) is unique to Louisiana class actions because of the state's statutory scheme, and (3) has polarized the judges of the Eastern District of Louisiana. This question implicates the jurisdictional-amount prong of the test for diversity jurisdiction, and asks:

> When considering the class plaintiffs' motion to remand, can attorney's fees that the court may allow to class representatives pursuant to Paragraph A. of art. 595 ["art. 595(A)"] of the Louisiana Code of Civil Procedure ["LCCP"] be included in calculating the requisite amount in controversy, absent some other provision of Louisiana law that specifically authorizes the award of attorney's fees?

To get this divisive question before us under § 1292(b), the district judge denied the motion of the Plaintiffs-Appellants ("class representatives") to remand the case to the state court in which they filed it as a putative class action against the Defendant-Appellee ("Chevron"), and from which Chevron removed it to the district court. The parties agree, and the facts confirm, that complete diversity exists between the class representatives and Chevron,[1] leaving the amount in controversy as the sole contested issue on appeal.

For the reasons explained below, we answer "yes" to today's question. And, as none contest that the amount here in controversy crosses § 1332's threshold of $75,000 when all allowable attorney's fees are attributed exclusively to the class representatives, we affirm the refusal to remand this case to the state court of

---

[1] Chevron is a Delaware partnership with its principal place of business in Texas, and the class representatives are residents and citizens of Louisiana. As only the named class representatives in a class action are required to be diverse from the defendants, see Snyder v. Harris, 394 U.S. 332, 340 (1969); Aetna Cas. & Surety Co. v. Iso-Tex, Inc., 75 F.3d 216, 218 (5th Cir. 1996), diversity is indeed complete in this case.

2

origin, and return it to the district court for further proceedings.

## I. Facts and Proceedings

Just after noon on the day following an industrial accident at Chevron's chemical plant in St. James Parish, Louisiana, counsel for the class representatives filed the instant tort action in the state district court for that parish. The petition identifies Chevron as the defendant, the suit as a class action, and the members of the putative class as all persons or entities located within five miles of the plant who may have suffered damages as a result of the incident. The class representatives' petition asserts Louisiana causes of action in negligence and strict liability, and alleges that "[t]he claims of the plaintiffs herein for compensatory damages are all each [sic] individually less than $74,999.00." In addition to seeking certification of the class, determination of Chevron's liability to the class for compensatory damages, and recognition of the right of each individual class member to bring a separate action to establish the quantum of his damages, the petition asks the state court to allow the class representatives to "recover their costs for the prosecution of this class action."

Chevron removed the case to the Eastern District of Louisiana, asserting that (1) diversity is complete and (2) the amount in controversy is sufficient to support diversity jurisdiction when attorney's fees allowable under art. 595(A) are attributed to the

3

class representatives pursuant to In re: Abbott Laboratories ("Abbott").[2] Art. 595(A) defines the representative parties' "reasonable expenses of litigation" as "including attorney's fees."[3]

The class representatives timely filed a motion to remand, insisting that Abbott interpreted art. 595(A) as attributing attorney's fees to the class representatives only when a separate Louisiana statute (Louisiana Revised Statute § 51:137 in Abbott) authorizes assessing "a reasonable attorney's fee" to the defendant, over and above compensatory and any other damages. They rely on the facts that (1) no one of them (or any other class member, for that matter) is claiming a quantum of damages in this tort suit that could exceed § 1332's $75,000 jurisdictional amount threshold for diversity jurisdiction, without including interest and costs such as attorney's fees, and (2) not only are they not seeking attorney's fees under any specific Louisiana statute that expressly provides for such recovery,[4] they are not entitled to recover attorney's fees from the defendant, Chevron, in this

---

[2] 51 F.3d 524 (5th Cir. 1995).

[3] LA. CODE CIV. PROC. ANN. art. 595(A) (West 1999).

[4] Although various Louisiana statutes provide for the award of attorney's fees under specific causes of action (in Abbott the cause of action was price fixing for which attorney's fees are recoverable under LA. REV. STAT. ANN. § 51:137 (West 1987) ("§ 51:137")), none authorizes the courts to award attorney's fees in garden-variety, individual tort suits of this nature.

4

ordinary Louisiana tort suit, grounded as it is in negligence and strict liability.[5]

The district judge noted and described in detail the division among those judges of his court (including himself) who had considered whether alone, i.e., in the absence of a separate attorney's fees statute, the attorney's fees allowable to class representatives under art. 595(A) are includable in calculating the amount in controversy for purposes of diversity jurisdiction,[6] noting which judges had answered "yea" and which "nay." Rather than perpetuate this intra-district split of authority by ruling

---

[5] See Nassif v. Sunrise Homes, Inc., 98-3193, 2 (La. 6/29/99), 739 So. 2d 183, 185; General Motors Acceptance Corp. v. Meyers, 385 So. 2d 245, 247 (La. 1980).

[6] Cases from the Eastern District of Louisiana that have answered this question in the negative include Braxton v. IMC Phosphates MP, Inc., 2000 WL 1576827, at *1-2 (E.D. La. 2000); Vaughn v. Mitsubishi Acceptance Corp., 1999 WL 1277541, at *1-2 (E.D. La. 1999); Johnson v. Cytec Industries, Inc., 1999 WL 212753, at *1-2 (E.D. La. 1999); Dixon v. Ford Motor Credit Co., 1998 WL 914260, *3-4 (E.D. La. 1998); Ace Pest Control Co. v. KMart Corp., 979 F. Supp. 443, 446 (E.D. La. 1997); Greer v. Mobil Oil Corp., 1997 WL 180477, at *1-2 (E.D. La. 1997); and Cooper v. Koch Pipeline, Inc., 1995 WL 931091, at *1-2 (E.D. La. 1995). Those that have answered in the affirmative include McKnight v. Illinois Central R.R., 967 F. Supp. 182, 184-85 (E.D. La. 1997), In re Gas Water Heater Products Liability Litigation, 1996 WL 732525, at *5-6 (E.D. La. 1996); Duncan v. Equitable Life Assurance Society, 1996 WL 736988, at *6-8 (E.D. La. 1996), Millet v. Marathon Oil Co. ("Millet II"), 1995 WL 495901, at *1 (E.D. La. 1995), Francis v. Lomas Mortgage USA, Inc., 1995 WL 468172, at *2-3 (E.D. La. 1995); and Millet v. Marathon Oil Co. ("Millet I"), 1995 WL 396313, at *1-2 (E.D. La. 1995). Cases from the Middle District of Louisiana that have also answered the question in the affirmative include Hornsby v. AlliedSignal, Inc., 961 F. Supp. 923, 931 (M.D. La. 1997); Kimball v. Modern Woodmen of America, 939 F. Supp. 479, 483 (M.D. La. 1996); and Brooks v. Georgia Gulf Corp., 924 F. Supp. 739, 740-42 (M.D. La. 1996).

5

one way or the other on the issue, the court denied the class representatives' motion to remand and granted Chevron's motion to certify the question for interlocutory appeal pursuant to § 1292(b).

## II. Analysis

### A. Standard of Review

When there is complete diversity between all plaintiffs and all defendants, we review de novo an order denying remand to state court on the ground that the amount in controversy exceeds the minimum jurisdictional requirement.[7]

### B. Background:  Removal from State Courts of Louisiana

Subject to specific exceptions not here relevant, Louisiana prohibits a plaintiff from alleging or demanding a specific dollar amount of damages, limiting the prayer for relief to "such damages as are reasonable in the premises."[8]  To accommodate the situation when the removal sought is from a Louisiana court and subject matter jurisdiction is grounded in diversity of citizenship, we have modified the usual rule for determining whether the amount in controversy is present.  In such Louisiana situations, we permit the party seeking to maintain federal jurisdiction to establish by a preponderance of the evidence that the amount in controversy

---

[7] Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 722–23 (5th Cir. 2002); Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000).

[8] LA. CODE CIV. PROC. ANN. art. 893(A)(1) (West 1984 & Supp. 2001).

exceeds $75,000.[9]  When the case is one that has been removed from state court, such party may satisfy this burden in either of two ways:  (1) by demonstrating that it is "facially apparent" from the petition that the claim likely exceeds $75,000 or (2) "by setting forth the facts in controversy——preferably in the removal petition, but sometimes by affidavit——that support a finding of the requisite amount."[10]

We have not yet clearly established —— and, indeed, might not be able to establish —— the precise quantum of evidence required to preponderate and thereby show an amount in controversy sufficient to establish diversity jurisdiction.  In De Aguilar[11] —— a case situated identically to this one —— we stated that, because "the plaintiffs, in a bold effort to avoid federal court, [] specifically allege[d] that their respective damages will not exceed the jurisdictional amount,"[12]

> [t]he preponderance burden forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled.  The defendant must produce evidence that establishes that the actual

_____

[9] Manguno, 276 F.3d at 723; De Aguilar v. Boeing Co., 47 F.3d 1404, 1409, 1412 (5th Cir. 1995).

[10] Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) (emphasis in original); accord, Manguno, 276 F.3d at 723; Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999); Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999).

[11] De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995).

[12] Id. at 1409-10.

7

amount in controversy exceeds [the jurisdictional threshold].[13]

The category of state laws that the De Aguilar panel appears to have had in mind are those embodying the familiar maxim that a court may award more in damages than the plaintiff demands.[14] This maxim contemplates the existence of a state statute or doctrine that entitles a plaintiff to recover more than he has demanded. Louisiana is such a state, and has been at least since 1960 when its Code of Civil Procedure was enacted. Before that, essentially every state court petition concluded with an express prayer for general and equitable relief, which was considered to be a prerequisite for obtaining a judgment in excess of or different from the plaintiff's express prayer or demand. Enactment of the Louisiana Code of Civil Procedure eliminated the need for such a talismanic incantation, thenceforth treating every petition as though it contains such a prayer and expressly permitting a judgment to exceed the prayer or demand:

> Except [for a judgment by default], a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.[15]

---

[13] Id. at 1412 (emphasis in original; footnote omitted).

[14] Id. at n.9 ("Such a holding would render the jurisdictional amount all but meaningless in states with rules analogous to FED.R.CIV.P. 54(c).").

[15] LA. CODE CIV. PROC. ANN. art. 862 (West 1984) (emphasis added).

Thus, if a defendant in a Louisiana suit can produce evidence sufficient to constitute a preponderance showing that, regardless of the style or wording of the demand, the amount in controversy actually exceeds § 1332's jurisdictional threshold, that Louisiana case will then resemble any other amount-in-controversy case, bringing into play the foundational rule of removal jurisdiction: The plaintiff can defeat diversity jurisdiction only by showing to a "legal certainty" that the amount in controversy does not exceed $75,000.[16] And we have emphasized that "this is not a burden-shifting exercise"; rather, the "plaintiff must make all information known at the time he files the complaint."[17]

Finally, our special accommodation for testing the amount in controversy in Louisiana cases in which the quantum of the plaintiffs' demand could not have been alleged in dollars because of LCCP art. 893's proscription, has engendered the recognition that the federal district court's jurisdictional-amount calculus must include attorney's fees when an applicable Louisiana statute

---

[16] De Aguilar, 47 F.3d at 1412 (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

[17] De Aguilar, 47 F.2d at 1412.

9

allows the award of such fees.[18]  Until 1995, however, those cases involved individual actions, not class actions.

C.    Abbott

Then along came <u>Abbott</u>.  It required us to decide, in the context of Louisiana class actions, whether the potential for an award of attorney's fees under a Louisiana statute specific to the cause of action at issue (price fixing in <u>Abbott</u>) must be included by the district court in determining the amount in controversy; and, if so, how such fees are to be attributed.[19]  Being a price-fixing case rather than an ordinary tort case, <u>Abbott</u> implicated § 51:137, which provides:

> Any person who is injured in his business or property by any person by reason of any act or thing forbidden by this Part may sue in any court of competent jurisdiction and shall recover threefold the damages sustained by him, the cost of suit, <u>and a reasonable attorney's fee</u>.[20]

This provision obviously requires the court to tax attorney's fees (1) <u>to the losing defendant</u>, (2) <u>over and above damages</u>, and (3) <u>in addition to other costs</u>.  Generally, in the context of a Louisiana class action, attorney's fees under § 51:137 would be attributable

---

[18] <u>Manguno</u>, 276 F.3d at 723–24 & n.3 (construing LA. REV. STAT. § 22:658, which provides that an insurer "shall" pay attorney's fees as a penalty for not paying the insured within thirty days following submission of a claim); <u>Foret v. Southern Farm Bureau Life Ins. Co.</u>, 918 F.2d 534, 537–38 (5th Cir. 1990) (determining that LA. REV. STAT. § 23:632, which uses the mandatory "shall," supported an award of attorney's fees).

[19] <u>Abbott</u>, 51 F.3d at 526.

[20] LA. REV. STAT. ANN. § 51:137 (emphasis added).

10

pro rata to each prevailing class member as a "person who is injured."[21]  Thus, the sole relevant issue in <u>Abbott</u> was whether art. 595(A) changes the attribution to require that the total amount of attorney's fees assessable against the defendant under § 51:137 be attributed exclusively and entirely to the class representatives.

None dispute that in <u>Abbott</u> we answered this question in the affirmative, holding that, in calculating the amount in controversy, all awardable attorney's fees must be attributed to the class representatives to the exclusion of the other members of the class.[22]  Neither is it disputed that we based that holding on art. 595(A)'s requirement that attorney's fees allowed as an element of litigation expenses are to be allowed exclusively to the class representatives.

Although today's inquiry begins with <u>Abbott</u>'s rule attributing all class action attorney's fees to the class representatives, it is important to recognize at this juncture that in <u>Abbott</u> we were not required to decide, and in fact could not and thus did not decide, whether, in the absence of a separate statute imposing attorney's fees on the losing defendant (such as § 51:137 in <u>Abbott</u>), art. 595(A) either requires or permits the attorney's fees that the court may "allow" to the class representatives to be

---

[21] <u>Id.</u>

[22]<u>Abbott</u>, 51 F.3d at 526–27.

11

included in the jurisdictional-amount calculation.  The obvious reason why this issue (which is the one squarely presented to us today) was not before us in Abbott is that there was present in Abbott a state statute (§ 51:137), that (1) was specific to the price-fixing cause of action, (2) was separate from and in addition to art. 595(A), and (3) mandated the payment of attorney's fees to prevailing class members.  Therefore, the only question presented in Abbott was whether, for purposes of calculating the amount in controversy, attorney's fees recoverable under § 51:137 were attributable (1) ratably to all class members, or (2) exclusively (and entirely) to the class representatives.  Thus, art. 595(A)'s sole function in Abbott was to supply the ratio decidendi for holding that attorney's fees allowable in a Louisiana class action must be attributed to the class representatives.  It follows, then, that because a separate attorney's-fees statute was present in Abbott, anything we might have said about attorney's fees allowable under art. 595(A), when standing alone, would have been dicta.

Nevertheless, some judges of the Eastern District of Louisiana have read Abbott expansively, apparently conflating its attribution holding with the unaddressed question of art. 595(A)'s authorizing the allowance of attorney's fees vel non.  These jurists have read Abbott to stand for the proposition that, absent some other attorney's fees statute, the attorney's fees allowable (as distinct from attributable) under art. 595(A) cannot be counted toward the class representatives' amount in controversy.  More than one of

12

these judges seized on <u>Abbott</u>'s use of the word "key"[23] in referencing to § 51:137, to read our holding as requiring the presence of a separate attorney's fees statute every time. But such a reading would make the word "key" carry much more water than intended.

"Key" in <u>Abbott</u> is not synonymous with "indispensable" or "prerequisite" or "<u>sine</u> <u>qua</u> <u>non</u>", or "necessary." It is merely a rhetorical segue to the factual observation that, <u>in that particular case</u>, the attorney's fees, which happened to be <u>authorized</u> by a separate statute, were <u>attributable</u> to the class representatives and thus includable in calculating the amount in controversy. This in turn obviated any need to look to art. 595(A) as a possible source of authority to allow attorney's fees. Simply put, our reference in <u>Abbott</u> to the "other" statute as "key"[24] cannot be read to mean that attorney's fees must be supplied by a separate statute in every case. In fact, after that segue, § 51:137 is never again mentioned in the <u>Abbott</u> opinion: The entire substantive analysis focuses on the <u>attribution</u> function of art. 595(A), never mentioning its authorization function.

As settled law, <u>Abbott</u>'s rule of <u>attribution</u> of attorney's fees to the class representatives is not questioned by the parties. <u>Abbott</u> did not, however —— and, given the presence of § 51:137,

---

[23] <u>Abbott</u>, 51 F.3d at 526.

[24] <u>Id.</u>

13

could not —— address whether, standing alone, art. 595(A) can also serve as an independent source of attorney's fees in the absence of a separate statutory source. This is the question that has divided the judges of the Eastern District of Louisiana since Abbott, and this is the res nova question squarely presented today.

As noted, there is no provision of Louisiana law that allows, much less commands, the court to impose an award of attorney's fees on the defendant who is cast in judgment in an individual (non-class action) tort case. So, if this were an individual tort action rather than a class action, the determination of the amount in controversy for purposes of removal and remand could not include attorney's fees. But alas, this is a Louisiana class action, so we are bound, in the wake of Abbott, to analyze art. 595(A) further and determine whether, in addition to being the source of Abbott's holding that attorney's fees are attributable to class representatives, this code article, standing alone, is also the source of a class-action exception to Louisiana's no-attorney's-fees-in-tort-suits rule. For the reasons hereafter explained, we hold that it is.

D.   Art. 595(A), Louisiana Code of Civil Procedure

   1.   Plain Wording

In its entirety, art. 595(A) reads:

> The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or

14

> compromise is had which is beneficial, to the class.[25]

Literally, this article is expressed (1) _permissively_, using "may" rather than "shall"; and (2) _conditionally_, authorizing the court to allow the representative parties to recover litigation expenses (which expressly include attorney's fees) _only if_ the class litigation is the producing cause of either (a) a common "fund" that is _available_ to the class _or_ (b) some other type of "recovery or compromise" that is _beneficial_ to the class.  We first note that, on its face, this code article does not condition the court's authority to grant fees on the class's being successful to the point of judgment; rather, art. 595(A) requires only the availability of either a common fund or some other result that is beneficial to the class:  The fund or the other recovery can eventuate either from a judgment or from some non-judicial disposition, such as settlement, compromise, alternative dispute resolution, or the like.

We next note that the plain wording of art. 595(A) does not literally limit the permissible sources available for attorney's fees.  Facially, the code article does not restrict the source of such court-allowed fees to the fund or other recovery for the benefit of the class; the article requires only that such benefit result from the class litigation.  Neither does the article either

---

[25] LA. CODE CIV. PROC. ANN. art. 595(A).

15

expressly authorize or expressly prohibit the court's tagging the defendant with such fees. The Official Revision Comments to art. 595(A)[26] can be read as the Legislature's elimination of any question of source by stating its intention that attorney's fees allowed to the class representatives under authority of art. 595(A) are "to be paid out of the fund or benefits made available" by the class representatives' litigation efforts. In Louisiana's code-drafting scheme, however, such comments are not "the law," but rather are instructive or clarifying. Like legislative history, they are most compelling when the code article itself is ambiguous — and we are not prepared to say that art. 595(A) is ambiguous.[27] Instead, we assume arguendo that art. 595(A) does not authorize the

---

[26] LA. CODE CIV. PROC. ANN. art. 595, official rev. cmt. (bold in original, emphasis added, and citation omitted):

**Official Revision Comments——1960**
(a) It is intended, in the first paragraph [art. 595(A)], that the reasonable expenses of litigation allowed the successful representative parties <u>is [sic] to be paid out of the fund or benefits made available by their efforts</u>....
(b) The consistent <u>policy of Louisiana heretofore has been</u> to allow a successful litigant only his taxable costs, and <u>not to award attorney's fees, unless provided by statute or convention</u>. Under the general equity jurisprudence, <u>reasonable expenses of litigation in a class action, including attorney's fees, may be allowed the successful litigant</u>. The above article retains the consistent Louisiana policy with respect to the class action.

[27] The question whether the court can assess attorney's fees to the class action defendant on the strength of art 595(A) alone need not be answered for our purposes today, so we leave it to another day, preferably to a Louisiana court.

16

court to assess attorney's fees to the class action defendant; rather, that only the common "fund" or the other "benefits" made available to the class by the class representatives' litigation are eligible sources of such fees.

Under that assumption, art. 595(A) remains a fee-shifting statute, but the shifting is not between the class and the defendant. Instead, the shifting is between the class representatives and the rank and file members of the class. Furthermore, such shifting is <u>not</u> restricted to common fund cases (which this case is not): The court can allow fees to the class representatives either from "a fund made available" or from "a recovery or compromise ... which is beneficial" to the class. Thus, in a non-fund case like this one, each class member's damage recovery could be reduced by the court and shifted to the class representatives, even if art. 595(A) were construed narrowly to prohibit the court from assessing attorney's fees to the losing tortfeasor.

In every Louisiana class action, then, the class representatives could receive attorney's fees from either (1) the defendant directly, pursuant to a separate attorney's fee statute, or (2) the non-representative members of the class indirectly, as a result of art. 595(A)'s fee shifting and attribution. In either case, calculation of the anticipated recovery of the class representatives — the only one that matters for purposes of § 1332 — must include those potential attorney's fees in addition to

17

damages, just as <u>Abbott</u> commands.  We know from <u>Zahn v. International Paper Co.</u>,[28] that in class actions, we separately test the amount in controversy of each class member, whether class representative or rank and file.  We also know from <u>Zahn</u> that we are <u>not</u> to aggregate the potential recovery of class members.[29]  In addition, § 1367 instructs that the jurisdictional amount is satisfied when the potential recovery (including attorney's fees when appropriate) of only one plaintiff exceeds § 1332's threshold.  And <u>Abbott</u> confirms that when the federal court has jurisdiction over at least one member of the class by virtue of (1) diversity of citizenship and (2) a sufficient jurisdictional amount, that court has supplemental jurisdiction over all diverse class members, including those whose claims fall short of § 1332's amount-in-controversy threshold.[30]

### 2. Mandatory or Permissive?

The class representatives would make much of the fact that art. 595(A)'s authorization for the court to allow them attorney's fees is couched in permissive terms, employing "may" rather than "shall."  Such reliance is misplaced.  The only other federal court of appeals to have addressed this issue directly is the Ninth

---

[28] 414 U.S. 291 (1973).

[29] <u>Id.</u> at 296-302.

[30] <u>Abbott</u>, 51 F.3d at 527-30.

18

Circuit which, in <u>Galt G/S v. JSS Scandanavia</u>,[31] squarely held that "where an underlying statute authorizes an award of attorney's fees, <u>either with mandatory or discretionary language</u>, such fees may be included in the amount in controversy."[32] Notably, the state statute at issue in <u>Galt</u> did in fact provide for the discretionary award of attorney's fees, so the quoted language clearly is not <u>dictum</u>. As one leading treatise notes:

> There is authority for the proposition that when the applicable substantive law makes the award of an attorney's fee discretionary, a claim that this discretion should be exercised in favor of the plaintiff makes the requested fee part of the statutorily required amount in controversy.[33]

Here, the class representatives' petition includes the prayer for "their costs for the prosecution of this class action," and art. 595(A) defines "expenses of litigation" to include attorney's fees. Therefore, even though the general rule is that interest and court costs are not includable in calculating the amount in controversy,[34] attorney's fees are includable when the state statute allowing cost shifting expressly defines the allowable expenses of

---

[31] 142 F.3d 1150 (9th Cir. 1998).

[32] <u>Id.</u> at 1156 (emphasis added).

[33] 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3712, at 277–78 & nn. 10–12 (West 3d ed. 1998 & Supp. 2002) (citing <u>Galt</u> and other cases).

[34] 28 U.S.C. § 1332(a) (requiring that the amount in controversy exceed $75,000 "exclusive of interest and costs").

19

litigation to include attorney's fees,[35] especially when the plaintiffs expressly pray for recovery of costs. In the instant case, art. 595(A) expressly authorizes the court to allow attorney's fees to the class representatives as a defined element of the expenses of litigation; and although that alone is sufficient in light of LCCP art. 862's authorization of judgments that exceed prayers or demands, it is further confirmed by the class representatives' prayer for recovery of costs. Furthermore, on this point we are bound by Abbott, which relied on art. 595(A) to include § 52:137's attorney's fees in the calculation of the class representative's amount in controversy. Declining to create a circuit split with the Ninth Circuit, we hold that when there is state statutory authority for the court to award attorney's fees to class representatives, "either with mandatory or discretionary language, such fees may be included in the amount in controversy."[36]

3. <u>Symmetry: Art. 595(A) as a Default Provision</u>

The propriety of this holding is underscored by a functional analysis of art. 595(A) in the context of Louisiana's statutory class action scheme. Such a contextual reading of art. 595(A) reveals that it is Louisiana's <u>default</u> provision for attorney's fees in class actions. Remembering that (1) as a general rule,

---

[35] "Generally, 'costs' do not include attorney fees unless such fees are by a statute denominated costs or are by statute allowed to be recovered as costs in the case." BLACK'S LAW DICTIONARY 312 (5th ed. 1979).

[36] Galt, 142 F.3d at 1156.

Louisiana does not authorize the court to award attorney's fees in tort suits, and (2) art. 595(A) stands as a statutory exception to that general rule for purposes of class actions, the function and necessity of using "may" rather than "shall" becomes self-evident. Art. 595(A) completes the attorney's fees picture for Louisiana class actions by covering the otherwise-unaddressed situation in which (1) there is no separate statutory provision for attorney's fees, and (2) such fees could not be assessed against a defendant cast in judgment were the action based on an individual delictual claim rather than a class claim. The way that art. 595(A) harmonizes Louisiana's attorney's fees rules in the context of class actions is by empowering, without mandating, the court to "allow" attorney's fees to class representatives from funds or other sources of recovery made available to the class — whether by judgment, settlement, or otherwise — so long as such favorable result is the product of the class litigation.

Quite simply, when there is a separate statute (such as § 51:137 in <u>Abbott</u>) that mandates assessment of attorney's fees in favor of the class and against the defendant, there is no need for the court to invoke art. 595(A)'s default authorization to shift a portion of the class members' recovery for the benefit of those class representatives who have contracted with the attorneys and could be out of pocket for various costs and expenses. But when, as here (and in myriad other Louisiana tort class actions) attorney's fees are <u>not</u> recoverable under some separate statute,

21

art. 595(A) clutches in to supply the default rule, authorizing the court to "allow" attorney's fees and other costs to the class representatives out of the sums recoverable by the entire class in recompense for damages —— specifically, the funds made available by judgment, compromise, or any other source, as long as it results from the class litigation and is for the benefit of all class members —— whether in a common fund or in separate, individual recoveries.  Of course, this is only meet and right when the recovery from which attorney's fees are allowed flows from the class action litigation.

It is this default function of art. 595(A) —— complementing as it does, those situations, such as in Abbott, in which separate statutes mandate attorney's fees —— that explains why the redactors of Louisiana's Civil Procedure code consciously employed the permissive "may" rather than the mandatory "shall."  Were it otherwise, the class representatives would be, or at least could be, the unintended beneficiaries of double dipping:  In an Abbott-like situation, receiving fees first from the defendant and then from their fellow class members as a result of a mandatory ("shall") taxing of their respective shares of either a common fund or separate awards of damages, would constitute a windfall to the class representatives rather than a making them whole, as clearly intended.  The use of "may" avoids the potential of such a windfall to the class representatives, imparting discretion to the court either to (1) refrain from shifting a portion of the class members'

22

recoveries from the rank and file to the class representatives when a separate statute imposes attorney's fees on the defendant, over and above damages; or (2) shift a portion from the shares of the non-representative class members by awarding therefrom attorney's fees and other costs to the class representatives when no other source is available.[37]

## III. Recap

In certifying the instant issue for interlocutory appeal under 28 U.S.C. § 1292(b), the district court stated: "There needs to be uniformity on this issue." Regarding the intra-district division of authority, the court credited Chevron with the observation that "the decision as to whether a diversity action can be successfully filed in or removed to the Eastern District of Louisiana depends on the luck of the draw." And, at oral argument, counsel for the class representatives confirmed the frustration of Louisiana class litigants (and, presumably, the various divisions of the Eastern District as well) when he stated: "However it falls, it's of no

---

[37] At oral argument, class counsel also advanced that this court must decide whether art. 595(A) is substantive or procedural. Counsel was mistaken for at least three reasons: (1) the Abbott panel clearly treated the article as substantive to reach its holding and, as the subsequent panel, we are bound by Abbott; (2) despite its location in the LCCP, art. 595(A) is obviously substantive on its face, specifying entitlement to costs and fees, not when or how to plead them, whether a motion is required, or the like; and (3) the law is settled that when a federal court sits in diversity, entitlement to attorney's fees is governed by state law. See e.g., Shelak v. White Motor Co., 636 F.2d 1069, 1072 (5th Cir. 1981) (characterizing the issue of awarding attorney's fees as substantive, and collecting cases); United States v. Midwest Construction Co., 619 F.2d 349, 352-53 (5th Cir. 1980).

23

matter to me.  What we need is a federal court required to apply this statute....and [] a clarification of the law."[38]  Agreeing wholeheartedly with the court and with counsel, we now resolve this divisive issue —— once and for all, we hope.

When a Louisiana class action is removed from state to federal court on the basis of diversity of citizenship, and the putative class seeks remand to state court, contending, inter alia, that no class member's claim can exceed § 1332's minimum amount in controversy, the party seeking to maintain federal jurisdiction —— here, the nonresident defendant, Chevron —— must show by a preponderance of the evidence that the claim of at least one resident class plaintiff is greater than the minimum jurisdictional amount, currently $75,000.  If the cause or causes of action asserted by the class are the kind for which Louisiana prohibits a plaintiff from alleging a specific quantum of damages, then, irrespective of the plaintiffs' conclusional allegation that no class member's individual claim can exceed the jurisdictional amount, another Louisiana law, LCCP art. 862, which allows the court to render judgment greater than the relief requested, provides sufficient authority for the court to include the potential attorney's fees award in calculating the amount in controversy.

---

[38]  Class counsel also advanced a policy argument.  As we find the law clear on the issue presented by the instant case, we do not address matters of policy, which are best left to the state when, as here, state law is at the heart of the issue.

When a separate, specific Louisiana law provides for the award of attorney's fees (as was the situation in <u>Abbott</u>), art. 595(A) requires all such fees to be (1) aggregated and attributed to the class representatives, and (2) included in determining the value of the class representatives' claims when calculating the amount in controversy. As there was such a separate state law provision for attorney's fees in <u>Abbott</u>, that panel had no choice but to leave to a subsequent panel the question whether, absent such a separate state law, art. 595(A)'s provision for allowing attorney's fees to class representatives, standing alone, suffices to require inclusion of such fees, along with the class representatives' potential substantive recovery, when testing for jurisdictional amount. We are that subsequent panel, and we have done our best to address the question head on.

As a result of this endeavor, we conclude that art. 595(A) is a default provision in the law of Louisiana which functions to ensure that, in the absence of a separate attorney's-fees provision, class representatives will nevertheless enjoy the possibility of recovering attorney's fees and other expenses of litigation, even if such recovery should come not from the defendant but from the individual recoveries of the other class members; provided such recoveries are the result of the class litigation. For purposes of § 1332, the source of such attorney's fees is immaterial, so long as they are (1) <u>allowable</u> by the court and (2) <u>attributable</u> to the class representatives.

25

Art. 595(A) supplies authority for both of those facets of the attorney's fees issue in the class-action context — attribution and authorization.  In Abbott, we looked to art. 595(A) solely as the source of the rule of attribution of all attorney's fees exclusively to the class representatives. Today, we look additionally to that same code article's express authorization for the court to allow attorney's fees to the class representatives. In conclusion, we hold, on the authority of art. 595(A), that when, in connection with a Louisiana class action suit that asserts a cause or causes of action for which there is no separate attorney's fees provision under Louisiana law, attorney's fees are nevertheless (1) allowable to the class representatives, and (2) attributable to the class representatives for purposes of the court's calculation of the amount in controversy.  Here, art. 595(A) serves dual purposes in the context of determining jurisdictional amount in connection with removal and remand of Louisiana class actions: (1) Art. 595(A) authorizes the allowance of attorney's fees to class representatives in default of fees being provided by some other separate statute; and (2) as construed in Abbott, art. 595(A) requires that allowable attorney's fees be attributed to the class representative(s) (to the exclusion of non-representative members of the class) in calculating the amount in controversy under § 1332.  Stated differently, when a putative Louisiana plaintiffs' class advances a cause of action, such as tort or strict liability, for which Louisiana makes no separate

26

provision for attorney's fees, the aggregate fee allowable under art. 595(A) shall be attributed entirely to the class representatives and included in calculating the amount in controversy.

The judgment of the district court denying remand to state court is affirmed, and this case is returned to the district court for further proceedings in that forum.

AFFIRMED AND REMANDED.

S:\OPINIONS\PUB\01\01-31350.CV0
4/28/04  9:11 am